UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB VILITCHAI,<br><br>                    Plaintiff,<br><br>v.<br><br>AMETEK PROGRAMMABLE POWER, INC. et al.,<br><br>                    Defendants. | Case No.: 3:15cv1957-L(BLM)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Pending before the Court in this putative class action for violation of California wages and hours laws is Plaintiff's motion to remand. Defendants filed an opposition and Plaintiffs replied. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, Plaintiff's motion is granted.

Plaintiff filed a complaint in State court asserting unlawful business practices in violation of California Business and Professions Code § 17200 on behalf of non-exempt or hourly-paid employees of Defendants Ametek Programmable Power, Inc. ("Ametek") and Aerotek, Inc. ("Aerotek"), a staffing agency. Plaintiff alleged that Defendants violated California law by failing to pay minimum wages, overtime, and wages to cover missed meal and rest breaks. Among other things, Plaintiff alleged that "[t]he total

'amount in controversy' as a result of this lawsuit, inclusive of claims for restitution and attorneys' fees, is less than five-million dollars ($5,000,000)."  (Compl. at 2.)

Aerotek removed the action to this Court under 28 U.S.C. §§1453 and 1446 based on diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  The notice of removal alleged that "[i]f challenged to do so by Plaintiff ..., Defendant can and will present evidence to establish that Plaintiff's claims exceed the jurisdictional minimum of $5,000,000.00."  (Not. of Removal at 4.)

In his motion to remand, Plaintiff argues Aerotek did not sufficiently support the $5 million minimum jurisdictional requirement under CAFA.  28 U.S.C. §1332(d).  Plaintiff does not dispute any other jurisdictional requirements.

Plaintiff initially argues that the allegation of the amount of controversy in the notice of removal is not supported by evidence.  This argument was rejected in *Dart Cherokee Basin Operating Co. v. Owens,* which held that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  135 S. Ct. 547, 554 (2014).

Plaintiff next argues that Aerotek's allegation in the notice of removal is not plausible because it rests on the assumption that the class includes all Aerotek's non-exempt or hourly-paid employees employed in California.  Aerotek removed the action on the assumption that the putative class includes all of its employees in California, whether they were placed with Ametek or elsewhere.  On this assumption, Aerotek asserts that its portion of the putative class alone includes more than 110,000 members and the amount in controversy therefore exceeds $ 5 million, before including any of Ametek employees in the putative class.  Aerotek relies on the same reasoning in its opposition to the motion to remand.

Plaintiff counters that Aerotek's assumption is unreasonable.  He offers to amend the complaint to clarify the scope of the putative class to include only those of Aerotek non-exempt or hourly-paid California employees who were placed with Ametek.

"[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation omitted).  This rule is not altered even if, as here, the plaintiff affirmatively alleges in his complaint that the amount in controversy does not exceed $5 million.  *Id*. The defendant "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.  ... [T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id*. at 1199.  "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.*

Aerotek's assumption of a putative class exceeding 110,000 members is based on its interpretation of the class definition in the complaint.  "In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197; *see also La Cross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("our first source of reference in determining the amount in controversy [is] plaintiff's complaint").  The class definition refers to "[a]ll current and former California-based hourly-paid or non-exempt employees employed by any of the Defendants."  (Compl. at 4.)  Plaintiff contends that he intended to include only those of Aerotek's California non-exempt or hourly-paid employees who were placed with Ametek.  (Decl. of Jill J. Parker at 1.)  This is consistent with, and necessary in light of, the allegation that all violations rest on the joint employer theory.  (*See* Compl. at 7.)  When the class allegations are read in the context of the complaint as a whole, it is apparent that the putative class includes only those Aerotek employees who were placed with Ametek in California.  Aerotek's assumption that the putative class comprises more than 110,000 members and that the amount in controversy

therefore exceeds $ 5 million, is unsupported, and insufficient to meet Aerotek's burden in opposing Plaintiff's motion to remand.[1]

In the alternative, Aerotek points to Plaintiff's discovery requests and argues that Aerotek's non-exempt or hourly-paid employees placed anywhere in California are included in the putative class, because his discovery requests are not limited to the employees who were placed with Ametek. (*See* Aerotek Opp'n at 20-21 & Decl. of Michael S. Kun Exs. A-F (Pl.'s discovery requests to Aerotek).)  Aerotek's argument is unpersuasive in light of the broad scope of permissible discovery, *see* Fed. R. Civ. Proc. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ..."), and the allegation that violations were the product of a "uniform policy and systematic scheme" (Compl. at 7), which makes it reasonable to seek discovery of Aerotek's practices anywhere in California, rather than to limit the scope to the employees it placed with Ametek.

Ametek filed a separate opposition to Plaintiff's motion, arguing that if only its own non-exempt or hourly-paid employees are included in the putative class, the amount in controversy exceeds $ 5 million.  Ametek's calculation is based on the assumption of a 100% violation rate for the meal and rest break violations and a one-hour per week violation rate for the overtime violations. (Ametek Opp'n at 4-5.)  Ametek argues the assumption is based on the allegations in the complaint.  The Court disagrees.

---

[1]  It is therefore not necessary for Plaintiff to amend the complaint for purposes of this motion.  In support of his request for leave to amend, Plaintiff argues that *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111 (9th Cir. 2015), modified the long-standing line of cases that post-removal developments do not divest federal court of subject matter jurisdiction, *see, e.g., Visendi v. Bank of America, N.A.*, 733 F.3d 863, 868 (9th Cir. 2013).  *Benko* and its progeny allow consideration of a post-removal amended complaint when amendment is necessary to provide additional facts regarding the local controversy exception to CAFA jurisdiction.  The Court need not address the issue whether *Benko* applies to CAFA jurisdictional allegations other than for purposes of the local controversy exception.

In pertinent part, Plaintiff alleges that

> 28. ... Defendants engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees ... . This scheme involved, inter alia, failing to pay them for all hours worked, missed meal periods and rest breaks in violation of California law. [¶]
>
> 30. ... Plaintiff[] and the other class members ... did not receive all meal periods or payment of one additional hour of pay ... when a meal period was missed.
>
> 31. ... Plaintiff[] and the other class members ... did not receive all rest periods or payment of one additional hour of pay ... when a rest period was missed.
>
> 34. At all material times ..., Defendants failed to pay overtime wages to Plaintiff and the other class members for all the hours worked. Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation.
>
> 35. At all material times set forth herein, Defendants failed to provide the requisite uninterrupted meal and rest periods to Plaintiff and other class members.

(Compl. at 7 & 8.)

As to the meal and rest break violations, Ametek interprets the complaint to allege a 100% violation rate, *i.e.*, that in every instance of a class member working more than a five-hour shift, Ametek failed to provide for a meal and rest break. Although Plaintiff alleges Defendants had a "uniform policy and systematic scheme of wage abuse" (Compl. at 7), such allegations do not support a 100% violation rate. *See Ibarra*, 775 F.3d at 1198-99 ("a 'pattern and practice' of doing something does not necessarily mean *always* doing something" (emphasis in original).) Furthermore, the complaint alleges that the class members were not paid for an additional hour *when* they missed a meal or rest break (Compl. ¶¶30&31), and that they were not compensated for *all* meal and rest breaks they missed (*id.* ¶28; *see also id.* 35). The complaint does not allege class members missed all

meal and rest breaks, or even that Defendants failed to compensate them for every meal or rest break which was missed. The complaint therefore does not support a 100% or any other specific violation rate. In the absence of allegations supporting any particular violation rate, Ametek "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Id*. at 1199. Ametek has provided no evidence in support of its assumption that the meal and rest break violations occurred on every shift of five or more hours.

As to overtime, Ametek contends the complaint alleges that Ametek "failed to pay for *any* overtime ... ." (Ametek Opp'n at 4 (emphasis in original).) However, the complaint alleges that Defendants failed to pay overtime for "*all* the hours worked." (Compl. ¶34 (emphasis added); *see also id.* ¶28.) The difference between "any" and "all" is material. Whereas the allegation that Defendants did not pay for *any* overtime would support a 100% violation rate, the allegation that they did not pay for *all* of it allows for the conclusion that Defendants paid for some of the overtime worked. In its calculation, Ametek assumes that each putative class member employed by Ametek worked one hour of unpaid overtime per week. It provides no support for this assumption. Because the assumption is "pulled from thin air," it is insufficient to support Ametek's amount in controversy calculation.[2] *See Ibarra,* 775 F.3d at 1199.

Both Defendants claim that Plaintiff is obligated to prove that the amount in controversy is less than $ 5 million. This argument is rejected. Defendants, as the parties asserting jurisdiction on removal, bear the burden of proof. *Ibarra*, 775, F.3d at 1199.

---

[2] Aerotek makes essentially the same arguments for a 100% violation rate, but applies "conservative" estimates of 10% violation rate for the meal and rest break provisions, and fifteen minutes of unpaid overtime per employee per week for overtime violations. The Court need not address Aerotek's arguments because all its calculations are based on the unsupported assumption that the putative class exceeds 110,000 members. Even viewed in isolation, Aerotek's violation rate assumptions are insufficient for the same reasons as Ametek's.

1 | They offer no support for the assumptions they make regarding their respective amount in
2 | controversy calculations.  Given that Defendants have not met their burden, it is not
3 | necessary for Plaintiff to come forward with evidence in support of his estimate of the
4 | amount in controversy.  Where, as here, the evidence is in equipoise, *i.e.*, no evidence on
5 | either side, "the scales tip against federal-court jurisdiction."  *Id.*

6 |      For the foregoing reasons, Plaintiff's motion to remand is granted.  This action is
7 | remanded to the Superior Court for the State of California, County of San Diego.

8 | **IT IS SO ORDERED.**
9 | Dated:  March 6, 2017

Hon. M. James Lorenz
United States District Judge